Your Honor, in this case on the dot, number 2, data 16-0668, the people of the state of Illinois, Lincoln, Attalee, and Robert Schag, defendants and counts. Arguing on behalf of the defendants and counts, Mr. Byron S. Tobacco. Arguing on behalf of Lincoln, Attalee, Mr. Barry W. Gates. Counsel. May it please the Court? Yes. Good morning, Your Honor. My name is Brian Kohut. I'm an assistant appellate defender with the Office of the State Appellate Defender. And I represent Mr. Robert Schag, defendant in the criminal case. Mr. Schag was convicted of criminal sexual assault and indecent solicitation of an adult. This Court affirmed those convictions on direct appeal. He filed a post-conviction petition, which ultimately was denied following an evidentiary hearing. On appeal now, he raises one issue, and that is whether his post-conviction petition established that the appellate counsel was ineffective for failing to raise the issue that the circuit court violated to the Clean Court Rule 431B. The claim is guided by the familiar Strickland analysis of whether counsel performed efficiently and whether this efficient performance prejudiced Mr. Schag. The circuit court found that the trial court did not comply with Rule 431B and found that appellate counsel could raise the issue. The State does not challenge this finding for the defendant's established efficient performance. And to the prejudice prong, this Court must determine whether there's a reasonable probability that the result of the direct appeal would have been different. And in looking at that, it's a question of whether if appellate counsel would have raised 431B, assuming whether this Court would have granted relief. Specifically, for this claim, the defendant argues that appellate counsel should have raised the issue as a matter of first-pronged claim error, that is, whether the evidence was false or balanced. The evidence as to the criminal sexual assault offense was falsely balanced. A contentious element here was whether T.S. was unable to give knowing consent. T.S. knew what sex was. She went to a party knowing that the others wanted to marry her. On direct appeal, this Court found that the inability to give knowing consent was overwhelmingly established, correct? There is a statement in this Court's decision regarding on the second issue that said that as this Court stated previously, the evidence as to the knowing consent element was overwhelming. However, Mr. Chag's position is that that statement is a mistake. On the first issue raised on direct appeal was a sufficiency of the evidence issue as to the criminal sexual assault offense. Given the standard of review, viewing the evidence in the light most favorable to the prosecution, whether any rational trial effect would have found guilt beyond a reasonable doubt, this Court was firm on that issue. Then the second issue was a question of whether trial counsel was ineffective for allowing the State to present a psychological testimony about R.S., the minor victim of the solicitation of an adult offense. This evidence dealt with the solicitation offense. It had nothing to do with criminal sexual assault. This Court, in analyzing that, looked at the prejudice problem of the Strickland claim and said that the evidence was overwhelming as to the solicitation offense. Counsel, within that same argument, also argued that the prosecutor made an improper statement in summation in his closing argument along the same lines as to the defendant's role modeling for R.S. And this Court said, as this Court stated previously, the evidence was overwhelming as to the sexual assault offense. But this Court never stated the evidence was overwhelming as to the criminal sexual assault offense. The first issue was a sufficiency of the evidence argument, a different argument than the closely balanced first-pronged point of error or prejudice analysis under Strickland. And then the issue where it made that statement went to the solicitation offense itself. Okay. So your argument is that that comment, that the inability to give knowing consent, was overwhelming, the evidence on that point was overwhelming. That only had to do with indecent solicitation. That's correct. Yes. So the evidence was clear, overwhelming, that the victim did not have the ability to give knowing consent as to solicitation, but could give knowing consent to sex acts with the defendant? Well, no. I'm sorry, Your Honor. Go ahead. Okay. I read the State's position differently. I read the State's position as the statement that the evidence as to whether the overwhelming evidence of the criminal sexual assault went to that offense. But that's not the offense that was being discussed. It was the indecent solicitation of an adult offense that was being discussed within the confines of that issue. Mr. Shack's position is the whole statement is a mistake. This Court did not find that the evidence of sexual assault was overwhelming. Well, let's look at the evidence. What about Dr. Leder's testimony? He said that she had a hard time understanding the consequences of her actions. I think that was his specific testimony. He never gave an exact – he never opined that she was unable to give knowing consent. She was disabled. There's no question about that. She had guardianship. She could not live alone. She could never be independent, correct? She had mental deficiencies. There was testimony that she was never going to be independent. She could not live independently, correct? I think that's accurate. She was with her parents at the time. She was 25 years old. She did have inabilities, but she had her ability. And what about the defendant's own statements? And probably the strongest evidence of what she knew or could – was capable of deciding, he characterized her as being slow-minded, messed up during the party, that she was not brought upstairs, and she didn't have a full deck. And in the context that he made those statements is when the police officer questioned him about what she did to R.S., the 11-year-old minor victim of solicitation offense, and he was saying, you know, if she would have done something like that, she would have had to have been messed up, not playing with a full deck, those other statements that he stated there. What's telling here is she knew what she was doing. She knew why she was going to the party. She was there to trade sex for cannabis. She was able – she gave – she consented to sex with some of the men. But according to Leder, she could not understand the consequences of that. That was cruel behavior that she could not understand the consequences of. I read his testimony a little bit differently as to she did not understand the consequences of perhaps how you get a bad name, or maybe it could result in pregnancy or, you know, sexually transmitted diseases or something like that. What competing evidence was offered to challenge that testimony? Leder's testimony? Any of the testimony regarding her ability to understand. What competing evidence was there? What this court – what we're asking this court to do is, under SEBI, take qualitative, common-sense analysis of the evidence in the context of the case. Here, she consented to the act. In SEBI, there was a competing version, competing version. There was actual evidence, a competing version. And that's what you look at in deciding whether or not the evidence is closely balanced. What was the competing evidence, the competent evidence introduced before the jury that challenged Leder's testimony, that challenged the statements of the defendant, that she was slow, she didn't have a full deck? And he also said, correct me if I'm wrong, in that interview, that he could get her to do things. He said she was gullible. She was gullible. And he could, in particular, get her to do things, correct? Yes. So what is the competing evidence that challenged the State's case on that point? Her denial of consent to sexual acts with others and her withdrawing her consent to sexual acts with defendants specifically. And if she's unable to give consent, give knowing consent, then it stands to reason that she would be unable, she wouldn't withdraw that consent. So if she ever says no, that establishes that she knew what she was doing at full capacity when she said yes. Is that your point? No, that's not my point. We're not saying that, you know, she's not allowed to say no. We're saying in the context of what happened. It sounds like that's what you're saying. No, Your Honor. In the context of what happened at that party, she was consenting to sex with some people and she was saying no to other people or at other times. So she was in control of whether she was able to give consent. And she withdrew that consent specifically with the defendant. Okay. Then also there's other evidence as well. She entered a knowing guilty plea a year after the incident. With her parents present. Her parents were there. Her parents were present. Her guardians. I mean, Mr. Shagg contends that that shows that she knows what she's doing. Sufficiently to knowingly consent to sexual assault. Well, again, her parents were in the courtroom. They weren't at the party. That's accurate. So. That is correct. And also the evidence, the jury questions shows that it was split on this issue. The jury came back with a question to the circuit court, the trial court, saying we have a verdict on one, we don't have a verdict on the other. Do we need to reach verdicts on both? And the ex parte response of the trial court came back and said, yes, both. And then this very next question was, we need a little bit of guidance on what it means to knowingly give consent. And the judge said, you've been instructed as to the law. So these two questions show that the jury had questions about this evidence. They were split on the case, on the issue. I mean, how much do we read into that? How much should we read into that, really? I think it's circumstantial evidence that at least the jury found the evidence was closely balanced. Or perhaps a juror may have, one juror could have asked. So we don't really know, do we? That could be one juror. That's why we don't read into jury questions too much. Like People v. Downs, the Illinois Supreme Court reversed this court because this court read too much into a jury question. I don't think it's asking this court to read too much into a jury question, though. They said they were split. They didn't say, you know, we have one jury who's holding out. And then the very next question, we need guidance on this issue. So, I mean, I'm not going to suggest that it was 6-6. It could have been 9-3, 11-1. Even if it is 11-1, it shows that the jury believed the evidence was sufficiently close. Was the petition that went to hearing in this case on the issue of criminal sexual assault, wasn't it a second prong, a structural error argument in the petition as well as at the hearing and then in the arguments? At the hearing, let me go back. It started out as simply a 431B violation. In effect, the system of appellate counsel had raised this issue. In the amended post-conviction petition, counsel said it did not deprive the defendant of a fair trial. The state came back and said, well, this is not a second prong. It's a plain error. It doesn't qualify. Counsel reiterated in her answer to the motion to dismiss, counsel reiterated and said it denied him a fair trial. The judge allowed it to go to an evidentiary hearing, presumably citing that, you know, there's enough here that he wants to hear evidence. I don't know what he wanted to hear evidence on, given it's not second prong plain error. Maybe he wanted to hear evidence on the second prong plain error. Well, there wasn't a first prong plain error, I thought, on the solicitation. Well, that comes out at the evidentiary hearing. Once it goes to the evidentiary hearing, then counsel's argument is that, you know, the evidence as to the solicitation offense alone was sufficiently close to warrant a new trial. It's a portion of her argument. She didn't abandon. In her original and her amended post-conviction petition, she asked for a new trial on both charges, on both criminal sexual assault and solicitation of an adult, specifically on both charges. So by the time she gets to the evidentiary hearing, she's making an argument in support of her position on the amended petition, and she put what she felt was her best foot forward. She said the evidence as to the solicitation offense alone was sufficient to warrant a new trial. She didn't abandon her request for relief on the criminal sexual assault offense. No, but how closely tied? Because the first that we hear about closely balanced on criminal sexual assault is in the motion reconsidered. Well, it comes out at the evidentiary hearing. The argument on the evidentiary hearing was that the evidence was closely balanced. So she did say specifically – I'm sorry, Your Honor. Let me step back and try to answer your question a little bit more clearly. At the evidentiary hearing, she argued the evidence was closely balanced and she should get a new trial. She argued specifically that the evidence as to the solicitation offense alone was sufficient to warrant a new trial. It was backed up in her written closing argument. The trial judge denied the petition following the evidentiary hearing, saying this is not second-pronged plain error. So then counsel comes back with a motion for reconsideration, saying we argued first-pronged and second-pronged plain error at the evidentiary hearing. We need a decision on first-pronged plain error. And that's when the judge makes this cryptic comment, saying, you know, did I find that this case was closely balanced? I did not intend to make that finding. And then he just says he denied the motion reconsidered. So it does come out at the evidentiary hearing that she's alleging that the evidence was closely balanced and he should get a new fair trial. As to both offenses? That's the defendant's position. She starts out in the amended post-conviction petition asking for a new trial on both offenses. And then at the evidentiary hearing, she confines her argument only to the solicitation result offense. But that's just her argument. She has the claim in the petition itself. I see what you're saying. So she didn't abandon. Exactly. It's preserved. That's your argument, correct? Yes. Okay. Who drove the car to the party? The defendant did. They picked her up at some pre-designated area. They didn't pick her up at her house. I think it was a church parking lot. And he picked her up for a specific purpose, correct? A slow-minded woman that he knew he could get to perform sex acts, correct? Is that correct? He picked her up with a bunch of other people in the car. The other people that invited her over. Right. His intent at that time, it doesn't come out clearly at trial, Your Honor. And it doesn't come out clearly. Well, it's a fair inference, isn't it, that he picked her up, wanted her to perform sex acts, knew she was slow-minded, and that he could get her to do things. Is that a fair inference from the evidence? I wouldn't agree that that's a fair inference because he's with his nephews who wanted to trade sex for cannabis. The nephews certainly did. But there's no indication that that was the defendant's goal, that that was his intent to pick her up. You'll have time for rebuttal.  Thank you, Your Honor. Mr. Jacobs. Good morning. A police court counsel, Larry Jacobs, on behalf of the people of the state of Illinois. In this case, all of the machinations aside in what was initially argued in the amended petition, which the state maintains was different from what's now being raised on the appeal, the fact is the petitioner was unable to show prejudice from the appellate counsel's failure to raise this 431B violation. At the hearing, the third stage hearing, the appellate counsel testified, correct, that he did not feel that this would have been a viable petition. Yes, the appellate counsel, Hillgren, didn't testify. He didn't. He, I believe, at first said that he did not see it, but he acknowledged that if it had been raised, it would have been a harmless error analysis, and he didn't feel it was meritorious. Lame error or harmless error? Well, if he would have raised it, I believe it would have been preserved. It was preserved, so he said harmless error. But up until the point that there was oral argument on this amended petition, there had been no mention of this first pronged plain error analysis. So it's the state's position that it's, and given the court's comments and its direct appeal decision, that the evidence was overwhelming. It's the state's position that the petition was unable to show any prejudice. There was no evidence offered at this hearing to refute any of the evidence that had been presented to show that it was close in some way. The only allegation made, I believe, at that point, was that the determination was based upon the testimony of two mentally frail individuals. So when you look at the Seve case that Yara has mentioned that the appellant raised in his brief, there has been a consensus inquiry done by this court already based on the evidence that was before it and was before the circuit court in looking at this amended petition. So it's the state's position that without new evidence presented and with the court's strong statement that the evidence of T.S.'s inability to give knowing consent was overwhelming, it's the state's position. Would you agree that there is some evidence of her ability to give knowing consent? I mean, she has the mental wherewithal to say no to certain people, to stop acts as they're happening. And then we have the issue of the guilty plea that a trial judge looking at her allowed her to plead guilty, apparently a knowing guilty plea. There was evidence that she was able to voice yes and no, but there's also the evidence of Dr. Leder, Dr. Ali, who said that she, in addition to having an IQ of approximately 72, suffering from chronic mental illnesses, had some approval-seeking behaviors. And I believe Dr. Leder actually said that she did not understand the scope or the interpersonal relationships involved in the sexual interest. So although there was evidence that she was able to say yes and no, as this court observed, the defendant's own statements to Detective Jesnons indicated that he knew she was slow-minded. He could get her to do anything he asked her to do, I believe is what he said. And this court, as I said, had already made the determination, whether you call it closeness of evidence or the sufficiency of evidence, the inquiry would have been the same. There was nothing new presented on this petition. It was the same cold record. Do you agree with opposing counsel that the trial court statement that the evidence was overwhelming with respect to the ability that she was unable to give knowing consent was a mistake, that it was misread, that comment, as to what it applied to? I did not read it that way. If I recall correctly, the statement was, as we previously said, so it didn't necessarily confine itself to just the second argument, which was about a different analysis, as we previously said. And then it goes on to say it was overwhelming as to her inability to give knowing consent to sex with the defendant and, makes a substantive statement, and Arvaz. So I think that part does fall within what the appellant is saying, that they were talking about the indecent solicitation charge, but the clear import of it is that the court found that the evidence of criminal sexual assault, specifically the element of her inability to give knowing consent, was overwhelming. Something that is not focused on in the briefs, it's not just her inability to give knowing consent. The defendant has to be, it has to, the State has to prove that the defendant knew she was unable to give knowing consent, correct? Yes, and in fact. And that's why his statements that she could be manipulated. Right. On the first issue, the Court actually did find that the evidence was sufficient to prove both, that she was unable to give knowing consent and that he knew she was unable to give knowing consent. So I guess, again, the State's position is that this inquiry that the study talks about had already been done. There's nothing else that was presented in this amended post-conviction petition, other than the statement that these were two mentally disabled people. There's no contrary version. I did not argue race to be caught in this reply brief, but I do think it's apt that this court made an inquiry. Had a public counsel raised this issue on direct appeal, this would have been an amendment. The Court, I can't imagine, could have found that the evidence was sufficient, based upon its review of the evidence, sufficient for purposes of reasonable doubt and double jeopardy, and then said, but it was close and a new trial is required. Those are inconsistent statements. So the State's position is that. Well, Sebi talks about that difference. I mean, the difference between the sufficiency of close evidence and the closeness of sufficient evidence. I mean, it makes that distinction. There is a distinction. There is. But, again, there's a different version of events. This alters upon her ability to give no consensus, which was already addressed by this Court, and the jury obviously found, any jury note aside, that the evidence was sufficient to believe that she wasn't able to give no consensus, but he knew it. So the State's position is that the appellant is unable to show the prejudice here and to re-ask if there are further questions. So my prayer, I would just ask that you affirm the Court's denial of the petition. Thank you. Thank you. Mr. Court. Thank you, Your Honor. As to the knowing consent, whether the defendant knowingly knew that she was unable to give consent, he was there at the party. He saw her withdraw. She actually withdrew consent with him. So he knew that she was able to give knowing consent, able to withdraw that knowing consent, and knew that she was able to decline that consent with other party members. So as far as he knew, she was able to withdraw that consent, deny consent, and consent. With regard to Justice Berkey pointed out that these are different issues, whether it's a sufficiency of the evidence issue or whether it's a cost of balance of evidence issue. The first issue based on direct appeal of sufficiency of the evidence, that's a different standard of review. It's a completely different issue as to whether the evidence is cost of balance. Then as we discussed the second issue that came up, that's a question of whether R.S. has mental capabilities. And I'd like to quote from this Court's direct appeal, and I'll do it. We hold that they did not. This was discussing restrictive analysis. That's the second issue in the prosecutor's comment. This was a single brief remark at the end of the State's initial closing argument. The evidence of trial established that both T.S. and R.S. had impairments to the mental function. As we noted above, or it has not been noted above, the evidence established overwhelming that T.S. was unable to give her knowing consent to engage in sexual conduct with the defendant. This finding would also extend to whether she would knowingly consent to engage in sexual conduct with R.S. after the defendant told her to. Now, it's just referring to a previous finding, but there had never been no qualitative assessment of the evidence in a plain error context. It was sufficient to see the evidence argument, and this Court did not actually state that it was overwhelming. They found it, viewing the evidence, the life most favorable to the prosecution that the R.S. and Trial Fact could not give. And I think, Your Honor, Mr. Chetik, I ask that you reverse the circuit court's denial of the post-conviction petition and remand this matter to a new trial in the criminal section as well. Thank you. Thank you. The Court thanks both parties for the quality of your arguments this morning. The case will be taken under advisement, and a written decision will be issued in due course. This Court stands in recess. Thank you.